[No. 34817.  Department Two.  July 16, 1959.]

BREMERTON LODGE NO. 1181 OF THE BENEVOLENT PROTECTIVE
ORDER OF ELKS OF THE UNITED STATES OF AMERICA,
*Respondent,* v. THE STATE OF WASHINGTON,
*Appellant.*[1]

*The Attorney General* and *James A. Furber, Assistant,*
for appellant.

*Frederick B. Cohen* and *John E. Bowen,* for respondent.

MALLERY, J.—The plaintiff brought this action for a
refund of taxes paid pursuant to an order of the Wash-
ington State Tax Commission on December 6, 1954. From
a judgment in the amount of $21,540.07 in favor of plaintiff,
the defendant appeals.

[1] Reported in 342 P. (2d) 216.

The tax in question was levied upon the respondent's operation of slot machines between May 1, 1948, and December 31, 1952. The appellant's privilege or excise tax on certain mechanical devices in effect during the period in question is set out in the Laws of 1949, chapter 228, § 18, p. 844 (Rem. Supp. 1949, § 8370-96 [*cf.* RCW 82.28-.020]), which provides, *inter alia*:

"From and after the first day of May, 1941, there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging in business as an operator of certain mechanical devices irrespective of whether such activity shall be legal or illegal under the laws of this state or any subdivision thereof: . . .

"(b) Upon every person engaging within this state in business as an operator of (1) any mechanical device wherein only the element of chance determines a pay-out to the player, . . . as to such persons the amount of tax on such business shall be equal to the gross operating income of the business multiplied by the rate of forty per cent."

Laws of 1941, chapter 118, § 1, p. 306 (Rem. Supp. 1941 § 8370-97 [*cf.* RCW 82.28.010]), provides, *inter alia*:

"For the purposes of this title, unless otherwise required by the context: . . .

"(b) The term 'gross operating income' means the gross amount paid in by every player during each calendar month, less the amount of gross *pay-outs* made to such players, but without any deduction for amounts paid out to persons on whose premises the mechanical device is located or amounts paid out for any other purposes whatsoever.

"(c) The term *'pay-out,'* as used herein, means any cash payment automatically returned to a player by the mechanical device, or any cash, merchandise or *thing of value* won by or given to the player by or on behalf of the operator. . . ." (Italics ours.)

■ Under the statutory formula for computing the tax, the gross amount of *cash, merchandise,* and *things of value* given to the players of slot machines is deducted from the gross amount taken in by the slot machines, and forty per cent of the difference is the amount of tax due the state for the privilege of operating the slot machines.

.The operating policy and the accounting procedure of the respondent can be illustrated by the example of the five-cent slot machines. The players automatically received all of their winnings, except the jack pots. Winners of jack pots received five dollars from the respondent together with a white card, which read:

"B. P. O. ELKS #1181
BONUS JACKPOT

"Present this card at the Secretary's Office and receive _____ in tickets on the Special Game Night Award which will be drawn for each week on Wednesday night. YOU MUST BE PRESENT at drawing to win.

Date _____
" _____ to _____ Machine No. _____
"By _____ Checked by _____"

The winners could then take their cards to the office of the respondent's secretary and exchange them for tickets to a weekly drawing for mechandise prizes. The tickets read:

"GAME NIGHT AWARD
Contribution of 50 Cents Toward
ELKS SOCIAL AND COMMUNITY WELFARE
This Is Not An Admission Ticket
You Must Be Present at Drawing, Which Will Be
Held Weekly On Wednesday Nights"

Jack-pot winners of the five-cent machines could thus obtain five such tickets. The respondent, in computing the tax, deducted from the gross income the five dollars cash actually paid out on the jack pots plus $2.50 for five fifty-cent tickets to the drawings, or a total of $7.50 for each jack pot. A bookkeeping entry of a $7.50 *pay-out* for each jack pot as an accrued expense would, of course, be permissible, provided an adjusting entry was subsequently made when the value of the prize *pay-outs* were ascertained.

The aggregate face amount of the tickets issued to jackpot winners was $60,169. The value of the prizes given to winning ticket holders at the drawings held by the respondent aggregated $11,353.70. The adjusting entries

should have credited the respondent with that much as gross *pay-outs* on the tickets, and the remainder of the aggregate face amount of the tickets, or $48,815.30, should have been deducted from the respondent's accrued expenses in computing the amount of the tax. The respondent did not do this, but, instead, took credit for the aggregate face amount of all the tickets as a *pay-out* and disregarded the value of the prizes as having any bearing on the value of the *pay-outs* made on the ticket part of the jack pots. This resulted in a tax deficiency in the amount of $19,671.30.

▮ The respondent contends for the correctness of its bookkeeping method upon the theory that the tickets themselves were *things of value*, and, as such, they were properly computed at their face amount as *pay-outs* under the statute. It argues that the statute lays down no formula for determining the value of *things of value*, and, hence, the Washington State Tax Commission cannot object if the respondent attributes a value of $2.50 to the tickets without any reference whatever to the value of the prizes won by the winning ticket holders. This is put upon the basis that ticket holders could have presented the tickets to the respondent and compelled their redemption in cash at face value, and, although none ever did so, this inchoate right made the tickets worth $2.50 in fact. Of course, if any tickets had been redeemed for $2.50 cash, that amount should be credited to respondent, but to constitute a *pay-out* under the statute, it must, in fact, be a *pay-out* and credit cannot be taken for a pay-out of cash that was never made. Respondent was entitled to treat only the cash and the value of prizes actually turned over to winners as statutory *pay-outs*.

If the respondent's theory was tenable, the respondent could have escaped taxation entirely by the simple device of issuing a sufficient number of tickets, even though the prizes paid out to the winning ticket holders at the drawings were purely nominal in value. It is common knowledge that there is no fixed relationship between the aggregate

face value of tickets to a drawing and the value of prizes awarded to winning ticket holders. Two thousand fifty-cent tickets in the hat do not make the kewpie-doll prize have a value of one thousand dollars. The statute contemplates that the value of *pay-outs* in the form of *things of value* be computed by reference to the value of the things, not to an arbitrary value printed on the face of tickets having no intrinsic worth. Otherwise, the Washington State Tax Commission would be powerless to collect any tax when confronted with such manipulations.

The trial court erred in permitting the respondent to deduct as *pay-outs* the face value of the tickets issued instead of the actual value of the merchandise disbursed in computing the amount of the tax owed.

The judgment is reversed.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.